ELISHA B. BARNES et al., Appellants, v. MIS-
SOURI VALLEY CONSTRUCTION COMPANY
et al. ,

In Banc, April 2, 1914.

1. **DRAINAGE DISTRICT: Organization: Collateral Attack.** The
legality of the organization of a drainage district, being a
municipal corporation, cannot be collaterally attacked, nor even
inquired into at the suit of an individual.

2. ———: **Inaccuracies in Survey: Cured by Resurvey, etc.** In-
sufficiency or inaccuracy of the first survey of a proposed ditch,
and invalidity of a judgment entered by the county court
ordering the ditch constructed and attempting to condemn the
right of way for the ditch, may be cured by a proper judgment
subsequently rendered and a resurvey in pursuance thereto.

3. ———: **Notice: Sufficiency: To Dead Man.** A notice of
the organization of a drainage district directed to the persons
whose names are returned by the viewers and generally to all
other persons owning lands to be affected by the construction
of the proposed ditch, in the language of the statute, when
properly published, is due process of law and gives the court
jurisdiction over the owners of all land in the district, though
one of the names returned by the viewers was that of a dead
man. Especially is such notice sufficient where the lands
alleged to belong to said deceased person were divested out
of him in his lifetime and vested in other persons.

4. ———: **Construction of Ditch: Break in Survey: Injunction.**
A break or lack of continuity in the survey of the land con-
demned for a drainage district, whereby a strip of land twenty
feet wide on the boundary of the right of way and narrowing
to a point at the center of the right of way, and the fact that
at another point, for a distance of 200 feet, the right of way
is 150 feet wide, instead of 100 feet, as claimed by the con-
tractor in his answer, are not defects of such a serious char-
acter as to justify an injunction restraining the construction
of the ditch, since if the final report of the commissioners and
engineer appointed to survey and locate the right of way is
correct the judgment entered by the county court can be
amended *nunc pro tunc*, and the right of injunction is a matter
of grace rather than of right, and if there is a fragment of
land which has not been condemned over which defendants are
about to construct the ditch the owner is entitled under the
statute to maintain a suit for damages therefor after the ditch
has been constructed.

Barnes v. Construction Co.

5. ———: Insolvency: Additional Lands and Levy: Injunction. A drainage district may sue and be sued, and express power is conferred upon the county court to levy taxes to pay the expenses of condemning or purchasing such additional lands as the district may need for a right of way for its ditches, and therefore the district cannot be considered insolvent.

6. ———: Additional Notice: Invalidity of First. By causing to be issued and published a new notice to landowners, the county court did not nullify a previous notice regular in all respects, nor were the landowners released by the additional notice which need not have been given, nor did the county court lose its jurisdiction over those who were served with the first notice.

7. ———: Construction of Ditch: Injunction: Injury to Lands: Appeal. In the trial of an injunction suit to restrain the contractor from constructing a drainage ditch it is not proper to permit the plaintiffs to prove that their lands will be injured by the construction of the proposed ditch. The statutes have confided the power to pass upon such a question to the county court, and while no appeal from its decision has been provided, the Legislature alone can provide for appeals.

8. ———: Notice: Delay in Publication. A delay of two months after the finding of the final report of the viewers and engineer in publishing the notice to landowners of the ditch to be constructed and the lands to be affected, did not render such notice invalid, in the absence of any showing of a change of ownership in the lands between the time the report was filed and the publication was made. The delay did not deprive the county court of jurisdiction. The publication of the report in such cases is very similar to an order of publication to a non-resident, upon an affidavit, under the general practice act; and, besides, Sec. 2119, R. S. 1909, declaring that a "judgment shall not be impaired or in any way affected by reason of any default or negligence of any clerk or officer of the court, by which neither party shall have been prejudiced," is to be applied in an injunction suit to restrain the construction of the drainage district, which in effect is a collateral attack upon the judgment of the county court.

9. ———: ———: Publication: Affidavit Sworn to Before Publication. The fact that the affidavit of publication of the notice was sworn to before the notice was published will not authorize a judgment to enjoin the construction of the drainage ditch, where the county court made a specific finding that due and legal notice had been given to all persons owning land in the drainage district except those who had voluntarily entered their appearance.

Appeal from Buchanan Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*James H. Hull, James W. Boyd* and *Perry A. Brubaker* for appellants.

The decree and judgment rendered by the circuit court in this case, dissolving the temporary writ of injunction and finding in favor of the respondents is erroneous, not sustained by the law or the facts in the case, and should be reversed.  (1) The order made by the county court on December 11, 1911, was and is without authority of law, and said court had no jurisdictional right to make said order.  (a)  On November 2, 1908, Silas Berry and others filed what they claim to be a petition asking for the formation of a drainage district and the digging of a ditch. Thereafter some proceedings were had in the county court and some notices, not legal, were given, and the county court, under said petition and notices, did on August 2, 1909, make and enter what purported to be a final order and judgment establishing a district and ordering a ditch to be dug.  (b)  Thereafter, and on the 30th day of September, 1909, William T. Hutson and others brought a suit to obtain a writ of injunction. A writ of temporary injunction was issued on October 5, 1909.  This case was fully heard in the circuit court of Jackson county, and every feature of the drainage proceeding was considered, and said circuit court, after a full hearing, held and decided that the county court on August 2, 1909, had no jurisdiction; and the order made then was held to be null and void.  It was held null and void on the ground that the county court had no jurisdiction to make it.  All anterior matters and proceedings of the county court were adjudicated by

257 Mo. 12

that decision. Donnell v. Wright, 147 Mo. 646, 199 Mo. 308; Emmert v. Aldridge, 231 Mo. 130; Cantwell v. Johnson, 236 Mo. 603. (c) Up to that time from August 2, 1909, no order was made in the county court of Platte county. The said county court could not proceed on February 6, 1911, without a new petition. It had no right to reverse or ignore the judgment of the circuit court of Jackson county. (d) Even if the county court had the right to set aside the final decree of the circuit court, still it had no right to make the order of December 11, 1911, for the reason that the pretended notice issued on November 6, 1911, was not in accordance with the statute and was not effective, and was null and void. Said notice as respondents claim it to have been made and published, only purports on its face to give notice to such persons as were returned by the viewers and engineer in their report. Sec. 5587, R. S. 1909. (e) The county court had no right to make the order of November 6, 1911, setting the time there for the hearing of said matter, because if any person could make an order at that time that person was the clerk of the county court, and he never made any order fixing the time of hearing or of publication. Sec. 5587, R. S. 1909. The pretended publication gave notice to a time during the same term of court when it was issued. The statute says that the hearing of the same shall be set for some day of the next regular term of the county court. Sec. 5587, R. S. 1909. (f) The said pretended notice, given without authority of law, and without any order made on the part of the county clerk, does not describe the lands contained in said alleged district. It does not contain a tabulated description of said lands. The statute says there must be a definite description of the lands. Sec. 5587, R. S. 1909. (g) The part of the said notice directed to D. W. Hutson, who was dead four years before Silas Berry and others filed their petition, and owned an undivided interest

in many tracts of land at the time of his death was insufficient to give notice to him if said tracts had been properly described. (2) The county court exhausted all of its power when it undertook to make a final order on August 2, 1909. The viewers had done all they could do under their appointment. The engineer had exhausted his authority. All they had done up to August 2, 1909, was void under the decision by the circuit court. (3) While it is not necessary to show that the judgment and decree of the circuit court of Jackson county was correct, still we call the court's attention to the fact that the original petition of Silas Berry, filed in the county court in November, 1908, does not state any facts authorizing the county court to take the lands of the appellants herein for drainage purposes, and to turn the waters of Sugar creek on and across them by a ditch or otherwise. That petition proceeds upon the basis that, as alleged therein, it was necessary to cut down the bank of Sugar creek and turn the waters thereof on plaintiffs in order to protect the fields, lots, yards, gardens, pastures, crops and lands of the petitioners. Before the county court can acquire jurisdiction there must be a petition filed therein alleging that the contemplated drainage would be conducive to the public health, convenience or welfare, or where it would be of public utility or benefit, and the facts necessary to show that said ditch would be necessary for public health, convenience or welfare must be stated in the petition. No such facts are stated; and the circuit court of Jackson county was correct when it held that the county court had no jurisdiction in the matter of Silas Berry et al. That petition does not state where the contemplated ditch should start or where it should end. It does not say whether it was desired to issue bonds or not. Secs. 5579-80, R. S. 1909. The rule is universal that the petition must set forth every jurisdictional fact. The petition filed by Silas Berry and others on

November 2, 1908, fails of this in every particular. St. Louis v. Gleason, 89 Mo. 67; Hopkins v. Railroad, 79 Mo. 98; Jefferson County v. Cowan, 54 Mo. 234; School District v. Oeillien, 209 Mo. 464; Railroad v. Storey, 96 Mo. 620; Cory v. Railroad, 100 Mo. 288; Railroad v. Townsite Co., 103 Mo. 569; Railroad v. Swan, 120 Mo. 30; Whitely v. Platte County, 73 Mo. 30; Zimmerman v. Snowden, 88 Mo. 218; Railroad v. Railroad, 94 Mo. 542. This petition contains no description of the ditch. It contains no description of the lands to be embraced in the proposed district. It gives no names of landowners other than the petitioners. It does not give the width of the strip of land to be condemned. It does not give a true description of the beginning, route, or terminus of the ditch. It does not show that the petitioners possessed the statutory qualifications. Township v. Probate Judge, 53 Mich. 130. The law is and has ever been in condemnation proceedings that the petition must set forth the specific purpose for which the exercise of eminent domain is sought, and that it is necessary to take the property condemned for the specific purposes stated in the petition. 14 Cyc. 1031, note 43; Ib., 1030, note 40; Patterson v. Behr, 161 Mo. 513; Mattias v. Drainage Com., 49 Mich. 465; Frost v. Leatherman, 55 Mich. 33; Whiteford Twp. v. County, 53 Mich. 133. Wherever property is sought to be taken for public use the petition should either give the names of the land owners or a description of the lands. Seifener v. St. Louis, 141 Mo. 586; Miller v. Graham, 17 Ohio St. 1; Railroad v. Railroad, 94 Mo. 542. (4) The pretended notices given by the county court before August 2, 1909, did not in any material respect comply with the statutory requirements, did not contain a tabulated description of said lands, did not give the name of the person owning certain particular lands as described, did not purport to notify any person or persons except those mentioned in the viewers' report. It did not give

notice to those who were or might have been ascertained to own said lands or a part thereof or any interest therein, as the statutes provide. In said pretended notice, given in April, 1909, the lands are not described. Said pretended notice does not mention the names of any persons who are supposed to own any part, parcel or tract of said lands. That notice was jurisdictional. State ex rel. v. Taylor, 224 Mo. 463; State ex rel. v. Wilson, 216 Mo. 215. Hence, we again say that the county court had exhausted its right if it had any under said original petition when, on August 2, 1909, it made the final order. The suggestions are not necessary, but are made in order to show that judgment of the circuit court on July 20, 1910, was correct. (5) On February 6, 1911, the county court undertook to overrule the circuit court. No other order was ever made continuing the proceedings in the county court, or keeping the proceedings alive in the county court, or undertaking so to do before November 6, 1911. Hence, even if the county court had the right to overrule the circuit court, still its proceedings thereafter are null and void. (6) While the appellants contend that the county court had no right or authority of law or jurisdiction to make the order of December 11, 1911, still on other grounds the appellants are entitled to have the temporary writ of injunction perpetrated, and not dissolved. (a) Before a ditch 100 feet wide and 15 feet deep, necessitating, as the county court held and has been repeatedly stated in the proceedings, the space of ground 100 feet wide, such right-of-way must be legally condemned and the damages for the condemnation actually paid to the owners. No right-of-way across the lands of the plaintiffs has ever been legally or properly condemned, or appropriated for said purpose. (b) The evidence of D. W. Hutson's death was conclusive, and not disputed. The notice given by the county court upon which the order of December 11, 1911, purports to be based does not notify any person

except those who were mentioned in the re ort. The law does not proceed against the dead, but against the living. Adams v. Cossom, 228 Mo. 577; Gage v. Cartwell, 191 Mo. 705; State ex rel. v. Riley, 219 Mo. 688; State v. Wallace, 209 Mo. 365.

*Norton B. Anderson, Ardey Gabbert, George W. Day, W. H. Richards* and *R. L. Spencer* for respondents.

(1) The county court of Platte county found as a prerequisite to its last judgment being rendered in this case that due and proper and legal notice had been given in the proceedings of Platte County Drainage District Number 1, which it was passing upon. This finding of that court cannot be collaterally attacked or relitigated in this injunction proceeding. Tie and Timber Co. v. Pulliam, 237 Mo. 18. (2) The judgment of December 11, 1911, rendered by the county court, cannot be successfully assailed either upon direct or collateral attack, because the notice of July 3, 1911, complied in every respect with the law. R. S. 1909, sec. 5587; State ex rel. v. Blair, 245 Mo. 691. Any reference to the notice above referred to is conspicuously absent from the appellants' abstract of the record. The whole argument of the appellants on the question of notice is based upon the alleged invalidity of other notices. (3) The judgment of the county court establishing said drainage district cannot be challenged in this action for want of a sufficient petition or any other preliminary step in or under the orders of said court. State ex rel. v. Blair, 245 Mo. 687. (4) The plaintiffs having refused to accept the damages awarded them in the condemnation proceedings, cannot in this action use the fact of nonpayment thereof to defeat the construction of the public ditch. Railroad v. Clark, 119 Mo. 357; Shively v. Lankford, 174 Mo. 552; R. S. 1909, sec. 5594. (5) The decree

in the injunction case tried in Jackson county nullified two orders only of the county court, and left said county court full power to take up and administer the affairs of the drainage district at the point to which they had proceeded when the invalid orders were made. Furness v. Brummitt, 95 N. E. (Ind.) 1114; State ex rel. v. Taylor, 224 Mo. 479; State ex rel. v. Wilson, 216 Mo. 282; State ex rel. v. County Court, 137 Mo. App. 708-9. These appellants, impleaded with some others, obtained the Powell decree of injunction. That decree in terms studiously avoided the invalidation of any order of the county court relative to this drainage district other than those specifically named. That void order was no order. By it no rights were divested and no rights were obtained. It did not change the proceedings before the county court but left all prior proceedings before the county court intact. The county court did not lose jurisdiction of this drainage matter, and it was acting lawfully when it again took up the proceedings at the point where they had ceased to be legal, as pointed out by the decree.   (6)   Granting that D. W. Hutson was dead at the time of the proceedings in the county court, and that he died seized of lands affected by said proceedings, still his heirs, devisees, or any one claiming under him, were brought into court by the notice published July 3, 1911, directed to "and all other persons who may own such land or any part thereof or any interest therein" affected by the proposed improvement. R. S. 1909, sec. 5587; State ex rel. v. Blair, 245 Mo. 691. As a matter of fact, D. W. Hutson's interest in the land had been seized and sold under execution issued from the Federal Court of the Western District of Missouri, and his title thus sold and divested had become vested in the plaintiffs and appellants, and other persons named Hutson not parties to this action. It is perhaps worth noticing that D. W. Hutson was named as a plaintiff in this action, and that he remained as

such until the exigencies of the case seemed to have induced his attorneys to eliminate him as a co-plaintiff. It is further worthy of note that the United States marshal's deed divesting D. W. Hutson of his title was filed for record March 26, 1909, which was after the filing of the petition for the establishment of the drainage system in the county court, and on the same day but two minutes later the Hutsons filed their deed for record. (7) A drainage proceeding is a matter pending from the time of the filing of the petition, and all persons and parties are in court from the time of the giving of the first notice by publication of the filing of the preliminary report of the viewers, and the county court has jurisdiction and power to order any amendment or to correct any order made by it in the proceedings at any time it found an error had been committed; it was, in fact, the duty of the court so to do. State ex rel. v. Wilson, 216 Mo. 282; State ex rel. v. Taylor, 224 Mo. 480. (8) The county court had found as a fact as a part of its judgment rendered on March 1, 1909, incorporating the drainage district that due and legal notice of the pendency of the proceedings therefor had been given, and that finding of that court is not open to examination or review in this collateral injunction proceeding. Tie & Timber Co. v. Pulliam, 237 Mo. 1. Upon the recital in the county court's judgment incorporating the drainage district, that judgment of incorporation becomes final and conclusive. State ex rel. v. Wilson, 216 Mo. 277; State v. Dugan, 110 Mo. 128; Lingo v. Burford, 112 Mo. 149. The finding of the county court cannot be reviewed in any proceedings in any court. State ex rel. v. Wiethaupt, 150 Mo. App. 60. (9) By the act of the county court in its judgment rendered on March 1, 1909, incorporating and creating the drainage district, a municipal public corporation was thereby created and incorporated. This entity was a municipal subdivision of the State of Missouri. Drainage Dis. v. Turney, 235 Mo. 90;

State ex rel. v. Taylor, 224 Mo. 4℃᠆; Wilson v. Drainage Dis., 237 Mo. 39; Land & Stock Co. v. Miller, 170 Mo. 240; Wilson v. Drainage Dis., 237 Mo. 39. The validity of this incorporation can only be inquired into in a direct proceeding for that purpose in *quo warranto*. Hence these plaintiffs have filed the wrong kind of suit. State ex rel. v. Wilson, 216 Mo. 215; Black v. Early, 208 Mo. 281.

BROWN, J.—Equity in the circuit court of Buchanan county to restrain defendants from constructing a drainage ditch through lands claimed by plaintiffs. From a judgment dismissing plaintiff's bill they appeal to this court.

Plaintiff's petition does not so indicate, but it is disclosed by other parts of the record, that this litigation arose out of an order of the county court of Platte county organizing Drainage District No. 1 in said county, and in attempting to cause the construction of a ditch about five miles long, which ditch is intended to straighten the channel of Sugar creek and carry the waters thereof into the Missouri river. Sugar creek is described in the petition as a stream from four to six feet wide and one foot deep. It has a crooked channel and runs from northeast to southwest through a portion of Platte county, emptying into Little Sugar lake, situated about one mile from the Missouri river in said county.

The plaintiffs in their petition have diligently avoided all reference to the fact that the county court is seeking to construct a ditch to drain or otherwise improve lands situated in the above named drainage district. Said petition merely asserts, in a general way, that defendants are threatening and about to enter upon designated lands of plaintiffs and unlawfully and maliciously cut down the banks of Sugar creek, dig up and destroy plaintiffs' crops, fences, hedges, houses and barns, and turn the waters of said

creek upon plaintiffs' lands, to their damage in the sum of many thousands of dollars.

Said petition further alleges the insolvency of all the defendants, and, in appropriate language, charges the absence of any adequate remedy at law to protect the property of plaintiffs.

Defendants, by their joint answer, assert that the Missouri Valley Construction Company is under a contract with the county court of Platte county to construct a public drainage ditch along a right of way one hundred feet wide running across some of the lands claimed by plaintiffs.

Defendants further specifically plead the condemnation of said right of way for a drainage ditch by a judgment of the county court of Platte county entered on December 11, 1911, in a proceeding begun and prosecuted under article 4 of chapter 41, Revised Statutes 1909. The aforesaid judgment purporting to condemn the right of way for a drainage ditch is copied into defendants' answer, and purports to recite the precise boundaries of the right of way alleged to have been condemned, and also asserts the jurisdiction of the county court to enter said judgment of condemnation.

Defendants deny any intention to enter upon or disturb any lands now owned by plaintiffs, and assert that plaintffs have heretofore instituted and maintained another suit which had for its purpose the prevention of the construction of the aforesaid drainage ditch, and pray that plaintiffs be enjoined from bringing any further actions, either at law or in equity, having for their purpose the prevention of or delay in digging said ditch.

The defendant Galen B. Anderson is a civil engineer, appointed by the county court of Platte county to assist in surveying the right of way for the aforesaid drainage district; and defendant J. W. Harrington is a clerk of the county court of Platte county.

They each deny any intention of doing anything about or concerning the lands of plaintiffs, except such acts as they are required to perform in their respective capacities as officers of said county court.

The reply of plaintiffs is a general denial of all allegations in defendants' answer.

The plaintiffs filed a motion to strike out several parts of defendants' said answer, which motion was overruled, and thereupon defendants filed a motion to dissolve the temporary restraining order issued by the circuit court of Platte county at the time this suit was instituted, on the following grounds: (1) No equity on the face of the petition; (2) a complete defense set up in defendants' answer; (3) and want of jurisdiction on the part of the court to determine the matters in issue.

The plaintiffs filed a motion praying for judgment on the pleadings, which motion was overruled.

When the case was called for trial the plaintiffs insisted that the answer of defendants was in the nature of a confession and avoidance, and, therefore, the burden of proof should be cast upon them. The trial court seems to have adopted the plaintiffs' suggestion in this respect.

The evidence of defendants tended to prove that at the November term, 1908, of the county court of Platte county one Silas Berry and nine other persons owning lands adjacent to Sugar creek in said county filed a petition praying that a ditch be constructed so as to straighten the channel of said creek and turn the waters thereof into the Missouri river, and that the cost of constructing such ditch be taxed against the lands which would be benefited by said improvement. Said petition contains all the recitals required by section 5579, Revised Statutes 1909, except that it omits to recite whether the petitioners desire the issuance of bonds to raise funds to make the contemplated improvement. This omission does

not seem to be important as there has been no attempt to issue bonds.

On Monday, March 1, 1909, the county court of Platte county heard the petition of said Silas Berry et al., as well as thirteen remonstrances or exceptions to said petition, and finding that the ditch prayed for was practicable and would be of great public utility in preserving the lands of petitioners and the public health, ordered that the ditch be constructed, and that the lands to be benefited thereby should constitute Drainage District No. 1 of Platte county, Missouri, which order described the lands to be included in said district.

Said order of March 1, 1909, recited the publication of a notice in a weekly newspaper published in Platte county of the contemplated improvement and intended incorporation of said drainage district, as required by section 5581, Revised Statutes 1909.

On August 2, 1909, the county court approved the report of the commissioners appointed by it to view, survey and locate the precise boundaries and route of the proposed drainage district; and on said last named day ordered and directed Galen B. Anderson, its engineer, to let a contract for the construction of said proposed ditch.

On October 1, 1909, seven of the plaintiffs in the present injunction suit, with thirteen other landowners of Drainage District No. 1 of Platte county, instituted a suit in the circuit court of that county to restrain Galen B. Anderson, the engineer, the clerk and members of the county court from letting any contract to construct the proposed drainage ditch. The petition in said suit is very similar to the one filed in the present action. It does not admit that any drainage district has been organized, but alleges, generally, the want of legal authority or power on the part of the county court of Platte county and the engineer to let a contract for constructing the proposed ditch;

averring irreparable injury, etc.   In short, the peti-
tion in that action is a collateral attack upon the drain-
age proceeding before recited without referring to
them or praying the dissolution or disincorporation
of the district.   This last mentioned suit was tried
in the circuit court of Jackson county on February 6,
1911, and the following final judgment entered therein
in favor of the plaintiffs:

"That the judgment and orders made by the
county court of Platte county, Missouri, on July 26,
1909, and August 2, 1909, providing for advertising
for bids for letting and making contracts and construct-
ing and digging of public ditch across the lands of
plaintiffs named in their petition herein are void, and
that defendants have no authority under said orders
and judgments of said county court to advertise for
bids, or to let, make or enter into any contract for the
construction of, or to dig said public ditch across said
lands of plaintiffs.

"The court orders that the defendants, and all
of them, be, and they are hereby restrained and en-
joined from advertising for bids for and from letting,
making or entering into any contract for the construc-
tion of, and digging of said public ditch, under said
judgments, orders of said county court of Platte
county, Missouri, made on July 26, 1909, and August
2, 1909; and defendants are enjoined and restrained
from entering upon the lands of plaintiffs, or order-
ing, authorizing, directing or causing other parties so
to do, for the purpose of construction of, or excavat-
ing or digging said public ditch under said orders and
judgments of said county court, so made on the 26th
day of July, and the 2nd day of August, A. D. 1909."

The above judgment was introduced by defend-
ants over the objections and exceptions of plaintiffs.
Neither party has pleaded said judgment in this ac-
tion.

No appeal or writ of error was prosecuted from the above recited judgment, but after the rendition thereof the county court of Platte county appointed an engineer and viewers (the same parties who had theretofore served in that capacity) to resurvey and correctly locate the boundaries of Drainage District No. 1 of Platte county, and to re-survey and locate the precise boundaries of the proposed drainage district, and make a report of the benefits which would accrue to the lands in said district by the construction of said ditch, as well as the damages which would be sustained by landowners through the condemnation and appropriation of a right of way for said ditch through their lands. Said report to also contain a statement of the estimated cost of the proposed ditch.

At the May term, 1911, of said county court the viewers and engineer filed their report as directed and required by the order of the county court.

There was also introduced in evidence, but not pleaded, some memoranda concerning a suit prosecuted in the United States court to prevent the construction of the ditch over which this controversy arose, but it appears that said last mentioned suit was dismissed by mutual consent of the parties thereto, so that it need not be considered in this action.

About two months after the filing of the last report of the viewers and engineer, to-wit, on July 3, 1911, the county clerk of Platte county issued and published a notice to landowners fixing August 7, 1911, as the date for hearing exceptions to said report and the benefits assessed and damages awarded therein. Further details of this notice will receive attention in our opinion. Upon the publication of the last mentioned notice, the proceedings to construct the proposed ditch were continued until November 6, 1911, when the county court, without quashing the notice issued on July 3, 1911, or dismissing the cause as to any per-

son then in court, caused a new notice to be issued to landowners returnable on December 11, 1911.

On December 11, 1911, the county court of Platte county, after reciting that it had acquired jurisdiction over all the persons owning lands in Drainage District No. 1, rendered judgment approving and confirming the last report of the viewers and engineer condemning the right of way for the ditch, and directing the letting of a contract for its construction. It is under and pursuant to this last mentioned judgment that defendant Missouri Valley Construction Company is threatening to dig the ditch about which plaintiffs complain.

In the finding of fact by the honorable circuit court of Jackson county, where this cause was heard on a change of venue, it is recited that the notice issued on July 3, 1911, to landowners, was sufficient to confer jurisdiction upon the county court to render the judgment of December 11, 1911, and accordingly the plaintiffs' bill was dismissed.

The plaintiffs' motion for new trial assigns, in general terms, sundry errors of the trial court, all of which may be considered under the assignments that the judgment is for the wrong party, and that the trial court "disregarded and failed to consider either the law or the evidence in rendering the judgment."

## OPINION.

I.  Quite a mass of the thousand pages of evidence introduced by plaintiffs was directed toward overturning or showing the invalidity of the order

Municipal
Corporation.

of the county court of Platte county organizing Drainage District No. 1 of said county, where defendants threaten to construct the proposed ditch.

Said drainage district being a municipal corporation of this State, the legality of its organization can-

not be collaterally assailed, nor even inquired into at the suit of an individual. This doctrine is supported by the following cases: State ex rel. Coleman v. Blair, 245 Mo. 680; State v. Fuller, 96 Mo. 165; The Catholic Church v. Tobbein, 82 Mo. 418; Burnham v. Rogers, 167 Mo. 17; and School District No. 35 v. Hodgin, 180 Mo. 70, l. c. 78.

II.    The plaintiffs strenuously objected to the introduction of the judgment entered by Judge Powell of the Jackson circuit court sustaining the first injunction suit brought by some of the plaintiffs and others to restrain the county court and its officers from letting a contract to construct the proposed ditch. At the time of the trial plaintiffs did not think enough of that judgment to plead it as an estoppel to the defenses set up in the answer, yet in their briefs and argument *ore tenus* plaintiffs lean heavily on the decree of Judge Powell to secure a reversal of this case, and even assert that Judge Powell's decree dissolved the drainage district.

<div style="margin-left:2em;font-weight:bold;">Former Adjudication.</div>

The most casual inspection of Judge Powell's decree, copied in our statement, will demonstrate that it only purports to restrain the advertising for and the letting of a contract to construct the ditch. Whether that judgment could be given an effect beyond the power of the court to grant in a suit instituted and maintained by individuals, we need not decide, because it did nothing beyond what it purported to do. It restrained the letting of a contract to construct the ditch, and while the particular reasons for granting that relief are not recited in the decree, it is most probable that the decree rests upon the insufficiency or inaccuracy of the first survey of the proposed ditch; or the invalidity of the judgment entered by the county court in 1909 ordering said ditch constructed and attempting to condemn the right of way therefor. All of said defects may be and we hold that they were, cured by

a subsequent survey of the right of way and a decree of the county court entered on December 11, 1911, which decree is now pleaded by defendants as their authority for constructing the ditch.

III. We will now consider such errors as defendants think they have found in said drainage proceedings. First, it is contended that the Suit Against Dead Man. county court acquired no jurisdiction over the owners of a certain tract of land in the drainage district reported by the viewers as belonging to one D. W. Hutson, because said Hutson was dead long prior to the filing of the petition to organize the drainage district. Granting that a suit begun and prosecuted against a dead man is void as to him, yet under the facts hereinafter recited we think appellants' contention is unsound. The defendants have introduced deeds establishing the fact that the title of D. W. Hutson in and to lands in the drainage district was divested out of him during his lifetime, and invested in other parties, some of them plaintiffs in this action. The notice issued to landowners on July 3, 1911, by the county clerk of Platte county was directed to some of the plaintiffs in this action *and generally to all other persons owning lands to be affected by the proposed drainage ditch.* That notice complied with section 5587, Revised Statutes 1909, and was sufficient to give the court jurisiction over each and every person owning lands within the drainage district, and the appellants, who were then part owners of the D. W. Hutson lands, were accorded every opportunity required by law to appear in the county court and resist the judgment condemning the right of way for the proposed ditch.

In the case of State ex rel. Coleman v. Blair, recently decided by this court (245 Mo. 680), it was held not necessary in the notice to landowners of the assess-

257 Mo. 13

ment of benefits and awarding of damages arising out of the construction of a proposed drainage ditch to designate every person appearing by the deed records to own lands within the district. The names to be inserted in the aforesaid notice are usually obtained by the viewers while inspecting and locating the right of way for the ditch, and such notice should, in addition to the names returned by the viewers, also designate generally all other persons whose lands will be affected by the proposed improvements. Such notice, when duly published, is due process of law. [State ex rel. Coleman v. Blair, 245 Mo. l. c. 696-7, and cases there cited.]

IV. A further contention of plaintiffs is that the last survey of the right of way of the proposed ditch is inaccurate, in that it does not describe correctly the 100-foot strip of land upon which defendants are threatening to enter and construct the ditch. At the trial the plaintiffs introduced a surveyor and civil engineer by the name of Steininger, who testified that he had gone over the survey of the right of way for the proposed ditch as copied into defendants' answer, and that at one point in said survey there was a break or lack of continuity, whereby a strip of land twenty feet wide on the boundary of the right of way and narrowing to a point at the center of such right of way, was never surveyed or condemned; also that at another point, for a distance of 200 feet, the right of way was 150 feet wide, instead of only 100 feet as claimed by defendants. The plaintiffs' witness further stated that he did not consider this last defect to be serious, and that it was probably caused by the fact that the section of land where the ditch is to be constructed is longer than it was thought to be by the viewers appointed to condemn the right of way. When this evidence came in the defendants requested, and were granted, permission to amend their

Survey of Ditch.

answer to conform to the proofs, and the answer was accordingly amended, but the amendment is not definitely set out in the record.

We do not consider the defects complained of in this paragraph to be of such a serious nature as to justify an injunction against the construction of the ditch. If the final report of the commissioners and engineer appointed to survey and locate the right of way is correct the judgment entered by the county court can be amended *nunc pro tunc*, and, at any event, as the right of injunction is a matter of grace rather than of right, we are constrained to hold that the defects mentioned are not of such a grave character as to justify the reversal of the judgment. [Johnson v. United Railways Co., 227 Mo. 423, l. c. 450.]

If there be any fragment of the land over which the defendants are about to construct the ditch which has not been condemned, there would be nothing to prevent the owner of such fragment from maintaining an action against the drainage district for his damages after the ditch has been constructed. [Secs. 5598 and 5599, R. S. 1909.]

Under section 5583, Revised Statutes 1909, the drainage district may sue and be sued, and it cannot. be considered as insolvent, as power is expressly conferred on the county court to levy taxes to pay the expenses of condemning or purchasing such additional lands as the district may need for a right of way. [Sec. 5588, R. S. 1909, as amended by Laws of 1913, p. 274.]

V.   Plaintiffs' resourceful counsel further contend that by causing to be issued a new notice to landowners on November 6, 1911, the county Notice to Land court nullified the notice issued by its Owners: clerk on July 3rd of that year, but we Second Notice. find that contention cannot be sustained. If the landowners were brought into court through the July notice there is no reason for contending that

they were released by an additional notice which need not have been given. [Burnes v. Burnes, 61 Mo. App. 612.] We find nothing in the evidence indicating an intention on the part of the county court to release its jurisdiction over any landowner who was served by the notice issued in July and returnable in August, 1911. The continuance of the cause to furnish time to publish another unnecessary notice gave the appellants additional time to appear and contest the assessment of benefits and the awarding of damages by the viewers, and the appellants cannot be heard to complain of a mere irregularity which did not prejudice them in any way.

The plaintiffs have not pointed out any defect in the notice to landowners issued on July 3, 1911, and we have not found any error therein which would impair the jurisdiction of the county court to render the judgment which it did enter on December 11, 1911, condemning the right-of-way for the proposed ditch. Warrants were issued by the county court and tendered to such of the appellants as could be found in Platte county for the damages which were awarded to them by the commissioners who surveyed the right of way, and the refusal by plaintiffs to accept the warrants tendered to them is not a matter of which they have a right to complain.

VI.    During the trial the plaintiffs offered to prove that their lands would be injured by the construction of the proposed ditch, but this evidence was excluded. We do not see how the trial court could have ruled otherwise. The General Assembly has confided to the county court the power to pass upon such question, as well as the propriety or wisdom of organizing the drainage district, and while no appeal has been provided for from its decision declaring a district organized, if more appeals are needed the Legislature alone can grant

*Rejected Evidence.*

that relief. [Millar v. Transit Co., 216 Mo. 1. c. 103.] The appellants were given due notice and an ample opportunity to present their grievances to the county court, and if they have failed to do so the fault must rest upon their shoulders. A defendant cannot choose the forum where his contentions shall be litigated; he must use the forum which the General Assembly has provided, and into which he has been summoned.

VII. It is also contended by plaintiffs that the publication to landowners issued on July 3, 1911, is

Issue of Notice.

void, because not issued *immediately* upon the filing of the final report of the viewers and engineer. Said notice was in fact not issued until about two months after the report of the viewers was filed.

Publication or voluntary appearance are the only methods of obtaining jurisdiction of landowners in a proceeding to drain lands under article 4, of chapter 41, Revised Statutes 1909. The names included in the notice were the names of the persons designated in the report of the viewers as owning the several tracts of land in the drainage district. If the plaintiffs in this cause had purchased their lands after the report of the viewers was filed, and before the notice was published, they might be in a better position to complain of the delay in issuing and publishing the notice, because a notice directed to former landowners might not be as likely to reach or command the attention of the present owners as if it were directed to such present owners by name as designated in the viewers' report.

The notice now under consideration should have been, and was, directed by name to the persons owning lands in the drainage district as reported by the viewers and engineer. It was also directed generally to those having lands which would be affected by the proposed ditch, and as it does not appear that any

of the plaintiffs purchased their lands in the district after the report of the viewers and engineer was filed they were in no way prejudiced by the clerk's failure to issue and publish the notice more promptly.

The filing of the report of the viewers occupies a very similar position in law to the filing of an affidavit alleging the nonresidency of a defendant in an action against such nonresident. In that class of cases it is a general rule in this State that where the order of publication is in fact issued upon a proper affidavit, and is published in accordance with the requirements of the statutes, a judgment based on such order of publication is not invalid because the order was not issued and published at the very time it was applied for. [Whinnery v. Missouri Lumber & Mining Co., 231 Mo. 262; Kane v. McCown, 55 Mo. 181; Johnson v. Gage, 57 Mo. 160.]

Section 2119, Revised Statutes 1909, ordains that "judgments shall not be . . . impaired, or in any way affected by reason of . . . any default or negligence of any *clerk* or officer of the court . . . by which neither party shall have been prejudiced." This is the rule to be applied when judgments are assailed by appeal or writ of error, and there are stronger reasons why it should be applied when, as in this case, the judgment of a court of competent jurisdiction is subjected to collateral attack. The delay in issuing and publishing the notice did not constitute such error so as to deprive the county court of jurisdiction.

VIII. A further insistence of plaintiffs is that there is no competent evidence that the notice to landowners was ever published, there being a **Publisher's Affidavit.** defect in the jurat to the affidavit of the printer, whereby it was made to appear that such affidavit was sworn to *before* the notice was published. This insistence cannot be sustained for the

reason that the county court made a specific finding that due and legal notice had been given to all persons owning lands within the drainage district except those who had voluntarily entered their appearance. That court was not restricted to the printer's affidavit, but could receive oral evidence that the notice was published in a newspaper in the manner required by law. It is presumed to have heard such oral evidence when its judgment is assailed collaterally. [Robbins v. Boulware, 190 Mo. 33; Raley v. Guinn, 96 Mo. 263.]

IX. After a laborious inspection of a voluminous record we are convinced that the judgment of the circuit court was for the right party and should be affirmed. It is so ordered.

*Lamm, C. J.,* and *Woodson, Graves, Faris* and *Walker, JJ.,* concur; *Bond, J.,* concurs in the result.